IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | CR10-229 |
| | ) | |
| BRENT KEVIN HERCULES | ) | |
| ANTOINE and JEAN A. SERAPHIN, | ) | |
| a/k/a ALLEN DEBROSSE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION

Pending before the Court are numerous pre-trial motions filed by Defendants Brent Antoine and Jean Seraphin. In this Opinion, we will address Defendant Jean Seraphin's: (1) Motion for Bill of Particulars [ECF#121]; (2) Motion for Information Favorable to the Defense [ECF#122]; (3) Motion for Notice of Government's Intention to Use Similar or Related Act Evidence [ECF#123]; (4) Motion for Disclosure of Agreements Between the Government and Government's Witnesses [ECF #124]; (5) Motion for Expert Discovery [ECF #127]; and (6) Motion to Require Law Enforcement Personnel to Retain Rough Notes [ECF #128]. Our decision on Defendants' Motion for Discovery and the Government's Motion for Reciprocal Discovery will be issued separately. A hearing on the remaining pre-trial motions filed by Defendants will be held by this Court on August 21, 2012.

By Orders dated April 30, 2012, we permitted Defendants Seraphin and Antoine to adopt each other's pre-trial motions as their own [ECF##144 and 145]. Accordingly we will treat all pre-trial motions filed as if filed by both defendants. We also ordered the Government to file an

Omnibus Response to all of Defendants' Antoine and Seraphin's pre-trial motions, which it filed under seal on May 14, 2012 [ECF#150].

**I. Motion for Bill of Particulars.**

In the Motion for Bill of Particulars, Defendants request that we order the Government to provide the following particulars with respect to Count One of the Superseding Indictment, which charges that the defendants conspired with each other and others to use counterfeit access devices, namely counterfeit credit cards, to purchase gift cards and merchandise:

1. "State when each alleged co-conspirator allegedly joined the conspiracy and whether it is claimed that defendant conspired directly with each of the co-conspirators and whether it is claimed that all the co-conspirators met together to form the alleged conspiracy." Motion for Bill of Particulars, ¶5(a).

2. "State the exact time, date and place for each occasion it is alleged that any two or more of the alleged co-conspirators combined, conspired, and confederated or agreed and set forth the names of each alleged co-conspirator present; define by time, date, and place all conspiratorial acts alleged to have taken place 'elsewhere'." Id. at ¶5(b).

3. "State whether it is claimed that there was an express agreement by the defendant to violate the laws of the United States. If so, specify whether the alleged agreement was oral or written. If oral, identify each party to the alleged agreement; the exact words spoken by each party to the alleged agreement or the substance thereof; the exact time, date, and location where the alleged agreement was made; and the name, address and telephone number of each person present. If the alleged agreement was written or is evidenced by writing, furnish a copy of all such writings." Id. at ¶5(c).

4. "State the exact date or dates on which it is alleged that any alleged con-conspirators who ceased to be a member of the conspiracy withdrew from the conspiracy and the method by which he communicated withdrawal to the other alleged co-conspirators." Id. at ¶5(d).

5. "State the name and address of each alleged member of the conspiracy. With respect to those alleged members whose identity was allegedly unknown to the grand jury, if now known, state the name and address of each such person; if the name and address of any such member of the conspiracy is still unknown, provide a complete physical description of such person." Id. at ¶5(e).

6. "State whether it is claimed that all the alleged co-conspirators intended to further all of the alleged objectives of the conspiracy, to-wit, possessing 15 or more counterfeit or unauthorized access devices. If an alleged co-conspirator intended to further fewer than all these objectives, state which co-conspirators intended to further which objectives." Id. at ¶5(f).

7. "Set forth each overt act by date, time, place, persons present and conversation with [sic] the government intends to offer evidence of at trial." Id. at ¶5(g).

8. "Set forth each overt act and the alleged corresponding access devices and/or counterfeit credit cards involved in each act which the government contends support its assertion that the alleged conspiracy involved access devices and/or counterfeit credit cards." Id. at ¶5(h).

Further, Defendants request that we order the Government to provide them with the following particulars with respect to Count Two of the Superseding Indictment, which charges that the defendants knowingly, and with intent to defraud, possessed 15 or more counterfeit or unauthorized access devices, more specifically, approximately 38 counterfeited credit cards and

71 unauthorized gift cards:

1. "State with specificity the specific manner in which this defendant possessed at least 15 counterfeit or access control devices." Id. at ¶6(a).

2. "State the name and address of each witness to such 'possession' and the nature of any observation by said person." Motion for Bill of Particulars, ¶6(b).

3. "State with specificity the specific evidence and/or statements which the government's [sic] believes demonstrates that this defendant knew that the devices were counterfeit or unauthorized." Id. at ¶6(c).

4. "State with specificity the specific manner that this defendant demonstrated intent to defraud." Id. at ¶6(d).

5. "State with specificity the specific manner that this defendant's conduct affected commerce between one state and another state, or between a state of the United States and a foreign country." Id. at ¶6(e).

Finally, Defendants request that we order the Government to provide them with numerous particulars with respect to Counts 3, 4 and 5 of the Superseding Indictment which charge the defendants with three separate acts of identity theft. In particular: (1) Count 3 alleges that the defendants, Brent Kevin Hercules Antoine and Jean Seraphin, and others, during and in relation to their alleged access device fraud, possessed, without lawful authority, the Barclay's Bank account number of a person known to the Grand Jury as "C.G," ending in account number xxx9177; (2) Count 4 alleges that the defendants, Brent Kevin Hercules Antoine and Jean Seraphin, and others, during and in relation to their alleged access device fraud, used, without lawful authority, the Citibank account number of a person known to the Grand Jury as "M.C.," ending in account number xxx3615, to obtain an item of value worth in excess of $1000; and (3)

Count 5 alleges that the defendants, Brent Kevin Hercules Antoine and Jean Seraphin, and others, produced and used a counterfeited credit card containing the FIA Bank account numbers of a person known to the Grand Jury as "G.F.," ending in account number xxxx9809.

The particulars sought with respect to the three identity theft counts are:

(1) "State with specificity the specific manner in which this defendant committed a felony violation of a statute listed in 18 U.S.C. §1028A(c)." Motion for Bill of Particulars, ¶7(a).

(2) "State with specificity the specific manner in which this defendant possessed a means of identification of another person without lawful authority." Id. at ¶7(b).

(3) "State the name and address of the witness to such 'possession' and the nature of any observation by said person. Id. at ¶7(c).

Federal Rule of Criminal Procedure 7(f) provides as follows:

> The Court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

Fed.R.Crim.P. 7(f). A district court has broad discretion in granting or denying a criminal defendant's motion for a bill of particulars. United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir.1989); Fed.R.Crim.P. 7(f) ("a court may direct the filing of a bill of particulars") (emphasis added). Among the purposes of a bill of particulars is to inform the defendant of the nature of the charges brought against her so that she is able to adequately prepare a defense. United States v. Addonizio, 451 F.2d 49, 63 (3d Cir. 1972). Our appellate court has instructed that a district court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." Rosa, 891 F.2d at 1066. However, a defendant

is not entitled to general discovery of the government's case, evidence or witnesses. United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975).

A bill of particulars should reveal "only the minimum amount of information necessary to permit the defendant to conduct his own investigation." United States v. Smith, 776 F.2d 1104, 1111 (3d Cir.1985). In ruling on a request for a bill of particulars, a court should consider all information that has been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment. United States v. Kenny, 462 F.2d 1205, 1212 (3d Cir. 1972).

In its Response, the government first argues that what defendants seek by this motion "are requests for detailed disclosure of the government's evidence, as well as the government's legal theories," which it does not have to provide to the defense. Omnibus Response, pp. 7-8. Further, the Government contends that the Superseding Indictment provides substantial factual detail about these crimes with which defendants have been charged. Id. at p. 8. Finally, the Government contends that it has provided the defendants with significant discovery relative to the charges against them. Id. at pp. 8-9.

Reviewing the factual and legal details provided in the Superseding Indictment and in the discovery produced to the defendants by the Government, the Court finds that defendants have been sufficiently informed of the nature of the charges brought against them so that they are able to adequately prepare a defense, and that the denial of defendants' request for a bill of particulars will not likely lead to prejudicial surprise at trial. Accordingly, Defendant's Motion for Bill of Particulars is denied.

## II. Motion for Information Favorable to the Defense.

In the Motion for Information Favorable to the Defense, Defendants seeks, pursuant to Brady v. State of Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972), all "evidence which tends to exculpate the defendant[s] or which may be mitigating in nature." Motion for Information Favorable to the Defense, Introduction and ¶2.

In response, the Government states that it "recognizes its obligation to produce to the defendants any known information that is both favorable and material to the defense." Omnibus Response, p. 9. The Government further explains that it has provided the defendants with any exculpatory evidence in its possession and that it is unaware of any other Brady exculpatory material. Id. at p. 10.

The Government also states that to the extent defendants are seeking the immediate production of any information that potentially could be used to impeach a government witness, that it does not have to produce "this type of potentially exculpatory material" at this time, but rather it is "producible at the time of Jencks Act disclosures" "so long as the defense is afforded sufficient time to make effective use of Brady information at trial." Id. at pp. 10-11, citing, United States v. Higgs, 713 F.2d 39, 44 (3rd Cir. 1983). Finally, the Government states that it "voluntarily will turn over Jencks Act material, along with any government witness 'impeachment' material 3 days prior to trial to ensure that unnecessary interruptions or delay are avoided. The government stresses, however, that this agreement applies only to those Jencks Act materials that it possesses at that time. If additional Jencks/ Brady materials are developed thereafter, they will be made available, as practicable, prior to the witness testifying on direct examination." Id. at pp. 11-12.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that due process requires the disclosure of "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The Supreme Court subsequently held that evidence which may be used to impeach the testimony of a government witness falls within the ambit of Brady when the credibility of the witness may have an effect on the jury's determination of guilt or innocence. See Giglio v. United States, 405 U.S. 150, 154, (1972).

Defendants' Motion for Information Favorable to the Defense will be granted and the Government will be ordered to provide the requested information as follows. The United States shall provide to Defendants any and all Brady exculpatory material forthwith. The United States shall provide to Defendants any and all Brady/Giglio impeachment material not later than ten (10) day before trial. Finally, we find that the Government shall disclose any and all Jencks Act material in accordance with 18 U.S.C. § 3500(b), but with encouragement to disclose such material no later than ten (10) days prior to trial.

**III. Motion for Notice of Government's Intention to Use Similar or Related Act Evidence.**

In the Motion for Notice of Government's Intention to Use Similar or Related Act Evidence, Defendants seek, pursuant to Fed.R.Evid. 404(b), an Order compelling the Government "to give notice of its intention to use any so-called 'similar and related Act evidence' at trial." Motion, p. 1.

In response, the Government explains:

The government has provided defendants evidence of the arrest of Jean Seraphin and Ramar Gardiner for forgery in upstate New York on November 15, 2010. The arrest was made by the Buffalo Police Department and USSS agents when Seraphin, Gardiner, and a third male named Mark Daniel were traveling across the Peace Bridge from Canada to the United States. A vehicle search of the car occupied by Seraphin and Gardiner contained counterfeit credit cards, forged

8

checks, numerous cell phones, two laptop computers, gift cards, a Google Map of Walmart locations, and multiple electronic games and merchandise purchased at Walmart locations. The Buffalo arrest report, along with the forensic report prepared by USSS Agent Vincent Merlino of the two laptop computers, and a cell phone, were produced to the defendants on a CD on March 14, 2012. The forensic examination of the laptop computers revealed substantial incriminating information regarding the trafficking in counterfeit credit cards, otherwise known as "dumps", and "txt" files revealing the use of illegal "skimming" devices commonly used to produce counterfeit credit cards." "Txt" Files revealed hundreds of bank account numbers, names, addressed and other means of identification of real account holders. Cell phone forensic examination of one of the phones recovered in the car uncovered significant 'SMS text' communications discussing illegal "carding" activity, and the acquisition of credit card account information as well.

Government's Omnibus Response, pp. 12-13. The Government further states:

> The government is hereby providing defendants with notice pursuant to 404(b) of the Federal Rules of Evidence that it intends to use to aforementioned arrest of defendants Seraphin and Gardiner, on November 15, 2010, including the evidence seized during the arrest, as "similar acts" evidence, for appropriate purposes, for proving either the identity, motive, plan, intent, knowledge, or other appropriate use, under the rules, of defendant[] Seraphin's involvement in an illegal credit card conspiracy at trial.

Id. at p. 14. The Government also states that the appropriate time for resolution of Rule 404(b) admissibility issues is normally at trial and that it reserves its right to use any prior criminal convictions of either Defendant Seraphin or Defendant Antoine under Fed.R.Evid. 609 should they testify at trial.

Based upon the Government's representation that it has provided Defendants with the sought after Notice, Defendants' Motion for Notice of Government's Intention to Use Similar or Related Act Evidence is denied as moot.

9

## IV. Motion for Disclosure of Agreements Between the Government and Government's Witnesses.

In the Motion for Disclosure of Agreements Between the Government and Government's Witnesses. Defendants ask the Court to "require the government to reveal all agreements [written or oral] between the government or its agents and all witnesses for [the] government or their attorneys and representatives, which might in any way influence the witnesses' testimony because of any of correspondence, concession or consideration in return for their testimony." Motion, p. 1. More specifically, Defendants seek:

> [the] disclosure of all such agreements whether written or oral, regardless of when they were made, including, but not [] limited to the following:
>
> 1. Any promise or assurance of any kind, express or implied, not to prosecute the witness for any crime or crimes;
>
> 2. Any promise or assurance of any kind, express or implied, not to prosecute a third party for any crime or crimes, where such promise or assurance in any way induces or affects the testimony, information, or cooperation of the witness;
>
> 3. Any promise or assurance of any kind, express or implied, to provide the witness with a grant of immunity of any sort, and any promise or assurance of any kind, express or implied, that the witness will not be prosecuted in connection with any testimony, information, or cooperation that the witness provides;
>
> 4. Any promise or assurance of any kind, express or implied, to recommend leniency or a particular sentence for any crime of which the witness has been convicted, or for any crime or crimes which the witness might be tried, regardless of whether any criminal prosecution has been commenced for such crime or crimes;
>
> 5. Any promise or assurance of any kind, express or implied, to provide favorable treatment or consideration such as money, a job, a new start, etc. to the witness or to friends or relatives of the witness in return for the witnesses' testimony, information or cooperation;
>
> 6. Any promise or assurance of any kind, express or implied, to recommend to any state or federal agency, bureau, department, or other unit, that the witness receive[] any sort of favor, benefit, compensation, or consideration.

> 7. Any promise or assurance of any kind, express or implied to recommend to any state or federal agency, bureau, department, or other unit, that any friend or relative of the witness receive any sort of favor, benefit, compensation, or consideration.
>
> 8. Any and all threats, express or implied, direct or indirect, aimed against the witness or any person of concern to the witness, and any type of coercion or intimidation by any agent of the Government, where such threats, coercion, or intimidation in any way whatsoever to the ability or willingness of the witness to provide any testimony, information, or cooperation.
>
> 9. Any sort of information described in items 1 through 8 above, where the agent or employee of any state has made an agreement with, promise of assurance of any kind to, or threats against, the witness, and the government is aware, becomes aware, or by due diligence ought to becomes aware of, such agreement, promise, assurance, or threat.
>
> 10. In addition to the information requested above, defendant requests that the Court order the government to reveal any other consideration or promise of consideration, formal or informal, direct or indirect, express or implied, made by any agent of the government or any agency or employee of any state, of which the government is aware, becomes aware, or by the exercise of due diligence ought to becomes aware, to any government witness. By "consideration," defendant refers to absolutely anything bargained for or not, given to, promised in any way to, or hoped for by the witness, which could arguably be of value or use to the witness or to any person of concern to the witness .or to any person of concern to the witness or which could arguably reveal in interest, motive, or bias on the witness' part in favor of the government or against the defendant, or which could induce or affect the witness' testimony, information, or cooperation in any way.

Motion, pp. 2-3.

> In response, the Government states that:
>
> The Government recognizes its obligation to produce any agreements it has with witnesses, cooperation agreement, promises, immunity agreements, etc., which might reveal any bias, leniency in sentencing, or favor towards a witness. These are Brady type disclosures consistent with impeachment evidence. See, Thomas, supra., However, the Government is not in possession of any such agreements, neither express nor implied, and if such an agreement between the government and a witness does occur, it will be produced in accordance with the government's Jencks production, and corresponding impeachment evidence.

Government's Omnibus Response, p. 15.

In essence, this motion requests <u>Brady</u> impeachment material which is a proper subject of discovery under <u>Giglio</u>. See <u>Giglio</u>, *supra*. Accordingly, the motion will be granted and an order will be entered requiring the government to disclose such materials no later than ten (10) days prior to trial.

**V. Motion for Expert Discovery.**

In the Motion for Expert Discovery, the Defendants request that we order the Government to provide the identification of all government experts expected to testify at trial as well as "the substance of [their] testimony and foundation for the same regarding each such witness it expects to call." Motion for Expert Discovery, ¶ 3 and WHEREFORE clause.

In its Omnibus Response, the Government answers that "it has not yet determined which expert testimony it will use in its [case-in-chief]." Omnibus Response, p. 22. The Government further states that:

> [I]f expert testimony is necessary, prior to trial, and in compliance with the requirements of Fed.R.Crim.P. 16(a)(1)(G), it will provide the [D]efendants with a written summary of any expert testimony, including the 'opinion', the 'basis' and the reasons therefor as well as a curriculum vitae or similar summary of the expert's qualifications.

<u>Id.</u> at p. 23. The Government further notes that it "will provide notice of the identity of the witness, a summary of qualifications, and his opinions no later than 10 days before trial." <u>Id.</u>

Fed.R.Crim.P. 16, which governs discovery in criminal prosecutions, provides that, "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed.R.Crim.P. 16(a)(1)(G). The summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." <u>Id.</u>

12

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id. Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Id. Fed.R.Evid. 705 states: "[u]nless the court orders otherwise, an expert may state an opinion--and give the reasons for it--without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross- examination." Id.

Pursuant to Fed.R.Crim.P. 16(a)(1)(G), the Defendants are entitled to a written summary of any expert testimony that the government intends to use during its case-in-chief at trial, including a description of the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Id. Accordingly, the Defendants' Motion for Expert Discovery shall be granted and the Government shall disclose the identification of all government experts expected to testify at trial as well as the substance of their testimony and foundation for the same. Further, pursuant to Local Rule of Criminal Procedure 16(B): "Upon a defendant's request, the government shall make available the Rule 16 material at the time of the arraignment. If discovery is not requested by the defendant at the time of the arraignment, the government shall

13

disclose such material within seven (7) days of a defendant's request." L.Cr.R. 12(B). Keeping with the spirit of L.Cr.R. 16(B), the Court will order the Government to provide the expert discovery sought pursuant to Fed.R.Crim.P. 16(a)(1)(G) within seven (7) days of the date of this Order, or, if the Government has not yet determined the experts it intends to use at trial, then within seven (7) of the date the Government makes said determination, but in any case, no later than ten (10) days before trial.

**VI. Motion to Require Law Enforcement Personnel to Retain Rough Notes.**

In the Motion to Require Law Enforcement Personnel to Retain Rough Notes, Defendants request an Order requiring law enforcement personnel to retain rough notes and to have the government turn over to defense counsel these rough notes in an appropriate time should they contain either Brady or Jencks Act material. Motion, p. 1.

In response, the United States states that it "has directed its agents to preserve 'rough notes' of witness interviews, and to the extent that the rough notes reveal favorable evidence not otherwise disclosed, they will be produced to defendants." Government's Omnibus Response, p. 27.

The Court of Appeals for the Third Circuit requires that the government retain rough notes and writings. In United States v. Ramos, 27 F.3d 65, 68–69 (3d Cir.1994), the appellate court reaffirmed its prior directives that the government preserve all notes of interviews with witnesses in criminal cases and rough drafts of investigative reports. Id. (citing United States v. Vella, 562 F.2d 275, 276 (3d Cir.1977); United States v. Ammar, 714 F.2d 238, 258–59 (3d Cir.1983). Therefore, Defendants' motion will be granted, all law enforcement officers in this case will be ordered to retain their rough notes and the Government shall turn over to defense

counsel these rough notes forthwith to the extent they contain <u>Brady</u> material and not later than one (1) week before trial to the extent they contain Jencks Act material.

**VII. Conclusion.**

An appropriate Order follows.

July **26**, 2012

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge